John P. Cohalan, Jr., J.
This is a motion for a temporary injunction incident to an action for a permanent one and for a declaratory judgment fixing the rights of the respective parties.
On July 3, 1962, defendant village enacted the following ordinance, pursuant to subdivision 44 of section 89 of the Village Law:
11 Section 11a ■ — ■ Traffic Infraction
“No person while operating or controlling a motor vehicle shall enter or allow same to enter Bayview Avenue from a point north of the southerly line of James Street and a westerly prolongation thereof
*952 Bayview, a continuation of Woodbine Avenue, runs in a north-northwest direction roughly parallel with the shore of Northport Harbor. Its over-all length from Main to James Street is about 2,200 feet. It meets the latter at a right angle. Bayview is a concrete road 22 feet in width from curb to curb. James Street, running east and west, is a blacktop, uncurbed highway of a slightly greater width.
On both sides of Bayview there are buildings, mostly residential in nature. By a prior ordinance, still in effect, no motor vehicle may park on the east side of the avenue.
Plaintiff (Karl’s) restaurant is situated on the northwest corner of the two highways, but outside the right angle formed by their junction. Its southerly boundary (and entrance) abuts the north side of James Street and is about 25 feet north of the northerly boundary line of Bayview Avenue. Thus, a motor vehicle driven north along Bayview would get to Karl’s by going straight across the 25-foot width of James Street, as to which there is no prohibition.
In like manner, a car could be parked on the west side of Bayview Avenue just south of the junction, and its passengers could alight and walk to the restaurant. After their meal they could return, on foot, to the parked ear, turn it around and then proceed south on the avenue to Main Street.
The rub lies in the circumstance that the ordinance proscribes egress by a motor vehicle over the self same route because no motor vehicle may enter upon Bayview Avenue from James Street.
Karl’s patrons reach the restaurant by both land and water. With the latter class we are not concerned.
The land patrons, according to plaintiff, come from all over Long Island, including Brooklyn and Queens, and have been accustomed to arrive at and leave the restaurant via Bayview Avenue.
Now, however, if a patron of the plaintiff, in compliance with the ordinance, wished to return to Main Street and Bayview Avenue, he would have to do so by going east for 65/100ths of a mile on James Street, south 54/100ths on Ocean Avenue (a rather winding concrete road) and then west on Main Street 45/100ths to the point of beginning, for a total of 1.64 miles. In this day and age the distance factor is of no great moment to an automobile; the problem, rather, is that posed to a stranger trying to find his way in the nighttime around the circuitous route.
Plaintiff asserts that the ordinance is aimed at it directly, that it is discriminatory and thus unconstitutional. This defendant *953 denies and points out that there are people living on both James Street and Bluff Point Road who are also affected by the ordinance.
Bluff Point Road dead-ends into James Street from the north and passes along the east side of the restaurant. Its southerly terminus is slightly east of the north end of Bayview. Along its length and opening from it are business and residential areas which are not affected by the ordinance as is plaintiff. The business properties would be daytime operations, and such residents as may live in the area would be familiar with the neighborhood and hence not affected to a crippling degree by the enforcement of the ordinance.
Although enacted in early July of 1962, no attempt to enforce the measure was made until October. At that time a sign was erected reading “ One Way ”, which was obviously ineorrect, but the mistake was not discovered until several persons had been given summonses for ordinance violation.
The onset of Winter, coupled with a scarcity of police personnel, led to a tacit winking at violations until April, 1963, after which time sporadic efforts were made to put teeth in the ordinance by enforcing it.
The circumstance that all summonses issued to date have been dismissed for one reason or another does not remove the sting nor the physical inconvenience occasioned by the initial attempt to enforce.
In its motion plaintiff neglected to assert in kaec verba that it has or will suffer ‘ ‘ irreparable damage ’ ’ but both in its moving papers and in the complaint enough is stated to spell out the omission. Thus, in the former, it is stated in William Karl’s affidavit that “In connection with the question of discrimination against deponent and his business * * * it (the ordinance) has been enforced solely on weekends when plaintiff’s restaurant is its busiest. The effect of this is to show beyond all doubt that the intent and purpose of the ordinance is to discriminate against the plaintiff and specifically to hinder the patrons of his restaurant and no others ” and in the complaint at paragraph twenty-first it is alleged “ That in fact the enforcement of said ordinance has harassed and damaged the plaintiff’s conduct of its said business in that it has created bad will on the part of the patrons of plaintiff’s restaurant, all to plaintiff’s damage ” and at paragraph twenty-fourth: “ That plaintiff has no adequate remedy at law to prevent said serious interference with its lawful business ”.
In this connection we turn to Cakdozo, J., and his well-framed statement in Wood v. Duff-Gordon (222 N. Y. 88, 91) wherein *954 he said: “ The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal ”,
The court is most mindful that the judiciary should not exercise its injunctive powers — particularly in legislative concerns — for light or transient causes. The principle is so obvious that it needs no implementation by citation.
The court is also aware that the village has the statutory authority to enact ordinances regulating the use of streets and sidewalks within its domain, pursuant to both the Village Law, and to section 1640 of the Vehicle and Traffic Law.
The test, however, is reasonableness. In applying the equities we find that the plaintiff, while open all year round, does a disproportionately large portion of its business in the summertime, which season is now with us. To do business it must have customers- — -to bring the customers back, they must be satisfied— to be satisfied they must depart the premises in good spirits with the intention of returning as patrons in the future — and to return in the future they must know they can travel over known highways to their destination.
If plaintiff loses customers because of this ordinance, it has been irreparably damaged. Sufficient has been shown in the moving papers to indicate a loss, actual or threatened, of some patronage. As against this we must determine if the damage claimed to so result from a denial of the temporary injunction will outweigh any that may result to the village.
This prompts the question — in what manner is the village damaged ?
A trial of the main issue can be had within three months time, for the double reason that the Equity Calendar is up to date, and defendant is entitled to a preference (Rules Civ. Prac., rule 151, subd. 1).
The ordinance to date has not been given maximum enforcement and a further short delay will not jeopardize its future enforcement if it is upheld as to the plaintiff.
Thus, the question answers itself.
Accordingly, the motion for a temporary injunction is granted.
The order to be entered hereon shall contain a clause to the effect that the village be restrained from preventing motor vehicles which are otherwise lawfully proceeding south out of plaintiff’s premises to cross James Street for the purpose of going south on Bayview Avenue.
Plaintiff is directed to place the cause on the calendar without delay so that it will be ready for trial at the October 1963 Term.